## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
#### WESTERN DIVISION

**OUACHITA WATCH LEAGUE, et al.**                    **PLAINTIFFS**

**v.**                **Case No. 4:11-cv-00425 KGB**

**JUDITH L. HENRY, et al.**                    **DEFENDANTS**

********************

**THE OZARK SOCIETY**                    **PLAINTIFF**

**v.**                **Case No. 4:11-cv-00782 KGB**

**THE UNITED STATES FOREST SERVICE, et al.**                    **DEFENDANTS**

## ORDER

In the above consolidated cases, the Ouachita Watch League *et al.* (collectively, "OWL") and the Ozark Society ("OS") each challenge the United States Forest Service ("Forest Service"), Bureau of Land Management ("BLM"), and other federal defendants' management of natural gas resources on the Ozark-St. Francis National Forest (the "Forest") and Greers Ferry Lake (the "Lake"). Prior to consolidation, the defendants filed separate motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief may be granted in each of the cases (*Ouachita Watch League v. Henry* (*OWL*), 4:11-cv-00425 KGB, Dkt. No. 20; *Ozark Society v. U.S. Forest Serv.* (*OS*), 4:11-cv-00782 KGB, Dkt. No. 30). Following consolidation, the Court ordered the parties to complete the briefing on defendants' motions to dismiss (*OWL*, Dkt. No. 53; *OS*, Dkt. No. 72). All parties have filed several briefs regarding the motions (*OWL*, Dkt. Nos. 63, 64, 65, 66; *OS*, Dkt. Nos. 41, 56). For the reasons below, the Court grants in part and denies in part defendants' motions to dismiss.

## I.      Factual Background

The Forest Service issued the first Land and Resource Management Plan ("LRMP" or "Plan") for the Forest in 1986.  In 2005, after completing a new environmental impact statement ("EIS"), the Forest Service issued a revised LRMP intended to govern the Forest through 2015. The 2005 LRMP determined which lands would be available for oil and gas leasing in the Forest and the stipulations that would apply.

At the time the 2005 LRMP was completed, a 2004 Reasonably Foreseeable Development Scenario ("RFDS"), prepared by the BLM, estimated that 10 to 15 new wells might be drilled in the Forest over the next 10-year period.  In 2007, apparently due to increased development activity and interest in the Forest, the Forest supervisor requested an updated RFDS from the BLM.  In 2008, the BLM issued a new RFDS predicting the potential for 1,730 wells in the Forest.

In 2010, the Forest Service prepared a Changed Conditions Analysis ("CCA") and a Supplemental Information Report ("SIR") analyzing the relevance of the 2008 RFDS's prediction.  In the SIR, the Forest supervisor found that "the existing plan direction is adequate to address the effects anticipated from the new RFD[S], and that a correction, supplement, or revision to the Revised Forest Plan's Final Environmental Impact Statement will not be necessary" (*OWL*, Dkt. No. 1-1, at 34).

The Lake is a water project located on the Little Red River in central Arkansas.  The U.S. Army Corps of Engineers ("Corps") operates the water project and owns some mineral rights underneath the Lake, which allows the BLM to consider including Corps-owned parcels in future mineral lease sales, subject to stipulations and restrictions the Corps might demand.

## II.      Legal Standard

Defendants argue that OWL and OS's claims must be dismissed either for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim upon which relief may be granted under Rule 12(b)(6).   A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction to hear the case.   A court has broad authority to decide its own right to hear a case, and it can consider matters outside of the pleadings when deciding a "factual attack" under Rule 12(b)(1).   *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *see Ozark Society v. Melcher*, 229 F. Supp. 2d 896, 902 (E.D. Ark. 2002) (explaining that a "factual attack" challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings).   Further, when the defendant makes a "factual attack," it is the plaintiff's burden to establish that jurisdiction exists, and "no presumptive truthfulness attaches to the plaintiff's allegations."   *Osburn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).   In other words, the non-moving party does not have the benefit of Rule 12(b)(6) safeguards in a factual attack.   *Id.* at 729 n.6.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555

3

(alteration in original) (citations omitted).   "When ruling on a motion to dismiss [under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

Because the Court determines below that, based on the circumstances and controlling law, defendants only make arguments under Rule 12(b)(6), the Court applies the 12(b)(6) standard to the entirety of defendants' motions to dismiss.   Despite previously denying the motions to dismiss without prejudice so that the administrative record could be completed because it appeared that defendants had made arguments under Rule 12(b)(1) (*OWL*, Dkt. No. 50; *OS*, Dkt. No. 70), to resolve the pending motions, the Court only considers the pleadings and factual allegations contained therein, accepts those factual allegations as true, and draws all reasonable inferences from the complaints in favor of OWL and OS.   The Court declines to convert defendants' motions to dismiss into motions for summary judgment under Federal Rule of Civil Procedure 12(d).   *See Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) ("A district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely upon matters outside the pleadings in granting the motion.").

### III.   Analysis

OWL alleges in its complaint that the defendants' management of natural gas resources on the Forest and Lake violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*, the Federal Land Policy and Forest Management Act ("FLPMA"), 16 U.S.C. § 1701 *et seq.*, and the Mineral Leasing Act, 30 U.S.C. § 181 *et seq.*, as well as corresponding federal regulations.   OS's

similar allegations are based on NEPA, NFMA, the Wild and Scenic Rivers Act ("WSRA"), 16 U.S.C. § 1271, *et seq.*, and the Energy Policy Act, 42 U.S.C. § 15942(b)(3).

Because the statutes on which OWL and OS base their claims do not provide a right of action or a waiver of sovereign immunity, OWL and OS must rely on the right of action and waiver provided by the Administrative Procedure Act ("APA"), 5 U.S.C. § 501 *et seq. Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 813 (8th Cir. 2006).  The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  *Id.* § 551(13).

### A.    OWL's Claims Regarding The Lake

Defendants contend that the Court lacks jurisdiction over OWL's claims regarding the Lake because they are either moot or unripe (*OWL*, Dkt. No. 20, at 14-16).  In its response to defendants' motion to dismiss, OWL states that, having achieved its goals, there is no further action to be taken in this case regarding the Lake (*OWL*, Dkt. No. 63, at 21-23).  Accordingly, the Court dismisses OWL's claims regarding the Lake.

### B.    OWL's NEPA Claims Under APA § 706(1)

Section 706(1) of the APA allows a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness Alliance* (*SUWA*), 542 U.S. 55, 64 (2004). Defendants contend that OWL failed to state a NEPA claim under § 706(1) because OWL fails

to identify an agency action that defendants were required to take.  Because this is a Rule 12(b)(6) argument, the Court will analyze it under that standard.

NEPA requires any federal agency proposing "major Federal actions significantly affecting the quality of the human environment" to prepare an EIS analyzing the potential impacts of the proposed action and possible alternatives.  *SUWA*, 542 U.S. at 72.  In certain circumstances an EIS must be supplemented.  *Id.*  Specifically, a regulation of the Council on Environmental Quality ("CEQ") requires supplementation where "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  *Id.* (quoting 40 C.F.R. § 1502.9(c)(1)(ii)).  The Supreme Court has interpreted NEPA in light of this CEQ regulation as requiring an agency to take a "hard look" at the new information to assess whether supplementation might be necessary.  *Id.* at 72-73 (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 385 (1989)).  However, the Supreme Court also has held that, under this statute and regulation, "supplementation is necessary only if there remains major Federal actio[n] to occur, as that term is used in [NEPA]."  *Id.* at 73 (alteration in original) (quoting *Marsh*, 490 U.S. at 374) (internal quotation marks omitted).

To put this framework in the context present here, the Forest Service issues a forest plan and "programmatic" EIS for each national forest.  *Sierra Club v. Robertson*, 784 F. Supp. 593, 602 (W.D. Ark. 1991); *see* 16 U.S.C. § 1604(a).  Accordingly, a well-prepared programmatic EIS for a national forest obviates the need for a subsequent site- and project-specific EIS unless new and significant environmental impacts arise which were not evaluated within the programmatic EIS.  *Robertson*, 784 F. Supp. at 602-03 (quoting *Minn. Pub. Interest Research Grp. v. Butz*, 498 F.2d 1314, 1323 n. 29 (8th Cir. 1974) (en banc)); *see* 42 U.S.C. § 15942.

OWL complains of the Forest Service's alleged failure to take a "hard look" at the changed circumstances as discussed in the CCA and the SIR and failure to supplement the 2005 EIS.[1]  Defendants admit that supplementing an EIS is a discrete agency action but argue that NEPA did not require supplementation of the EIS here because there did not remain "major Federal action" to occur.

Defendants cite *SUWA* in support of their argument.  In *SUWA*, the plaintiff argued that evidence of increased off-road vehicle use is "significant new circumstances or information" that requires a "hard look" and a supplemental EIS for the corresponding land use plan.  *SUWA*, 542 U.S. at 73.  The Supreme Court described the land use plan at issue, which was issued by the BLM to balance wilderness protection against other uses, as "designed to guide and control future management actions" and to "describe[] for a particular area, allowable uses, goals for future condition of the land, and specific next steps."  *Id.* at 59 (citations omitted).  The BLM, through the land use plan, permitted off-road vehicle use in certain areas.  *Id.* at 65.  The Court held that, although approval of a land use plan is a "major Federal action" requiring an EIS, that action is completed when the plan is approved.  *Id.* at 73 (citing 43 C.F.R. § 1601.0-6 (stating that approval of a land use plan is a "major Federal action")).  Accordingly, because the land use plan had been approved in *SUWA*, there remained no ongoing "major Federal action" to occur that could require supplementation, unless the BLM amended or revised the land use plan.  *Id.*

OWL responds that *SUWA* is distinguishable because, although the completed approval of the 2005 LRMP does not constitute a remaining "major Federal action" to occur, ongoing

---

[1]  OS states that its challenge is to a "final agency action" pursuant to § 706(2)(A), not an action to compel agency action under § 706(1) (*OS*, Dkt. No. 41, at 13).  To the extent that OS intends to bring a § 706(1) claim, it presumably would be subject to the same analysis as OWL's § 706(1) claim.  To the extent OS brings a § 706(2)(A) claim, those allegations are examined in section III.C. of this Order.

"management activities" do constitute remaining major federal actions to occur that are governed by the 2005 LRMP, which in turn was based on the 2005 EIS.  These ongoing management activities include, as alleged in OWL's complaint, defendants' alleged continuing issuance and approval of oil and gas leases and permits in the parts of the Forest that the 2005 LRMP designates for such exploration.  Specifically, the BLM may issue oil and gas leases to national forest lands designated for such use by the Forest Service.  30 U.S.C. § 226(h).  Whether a designated tract of land will be leased is left to the broad discretion of the Secretary of the Interior, acting through the BLM.  *See Udall v. Tallman*, 380 U.S. 1, 4 (1965); 30 U.S.C. § 226(a) ("All lands subject to disposition under this chapter which are known or believed to contain oil or gas deposits *may* be leased by the Secretary." (emphasis added)).  After obtaining a lease, a lessee also must file for each well site an application for permit to drill ("APD") that contains a surface-use plan of operations ("SUPO").  43 C.F.R. § 3162.3-1(d)(2).  The Forest Service must approve the SUPO before the BLM can approve the APD.  *Id.* § 3162-3-1(h); *see* 36 C.F.R. § 228.107.  Accordingly, the BLM may not issue a lease over the objection of the Forest Service.  30 U.S.C. § 226(h).  Conversely, the last action taken by the BLM in *SUWA* was approval of the land use plan that identified areas where off-road vehicle use was allowable.  It appears that no further BLM action contributed to the off-road vehicle use at issue in *SUWA*.

CEQ Regulations provide that major federal actions include non-federal actions "with effects that may be major and which are potentially subject to Federal control and responsibility."  40 C.F.R. § 1508.18.  "Projects include actions approved by permit or other regulatory decision as well as federal and federally assisted activities."  *Id.* § 1508.18(b)(4).  The NEPA regulations contemplate EISs, and thus the existence of major federal action, for "broad Federal actions."  *Id.* at 1502.4(b); *see Minn. Pub. Interest Research Grp.*, 498 F.2d at 1322

(holding that Forest Service's involvement in many individual timber sales constitutes major federal action because "the effect of many Federal decisions about a project . . . can be individually limited but cumulatively considerable" (citation omitted)).

The Eighth Circuit has outlined the analysis for determining whether non-federal action constitutes major federal action:  (1) whether the agency exercises legal control over the allegedly non-federal action or project, which depends on whether federal action is a legal condition precedent to the entire project; (2) whether the agency exercises sufficient factual control over the project; and, most importantly, (3) whether the agency has discretion in carrying out or approving the proposed project.  *Goos v. ICC*, 911 F.2d 1283, 1294-97 (8th Cir. 1990); *see Sharps v. U.S. Forest Service*, 823 F. Supp. 668, 676 (D.S.D. 1993).  Essentially, major federal action occurs when a federal agency "has discretion in its 'enabling' decision to consider environmental consequences and that decision forms the legal predicate for another party's impact on the environment."  *Goos*, 911 F.2d at 1295 (citation omitted).

Based on the case law above and the pleadings filed by the parties, the Court can reasonably infer that defendants' alleged continuing issuance and approval of oil and gas leases and permits in the Forest, as stated in OWL's complaint, constitutes "major Federal action."  *See Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1227 (9th Cir. 1988) (holding that BLM and other agencies were required to prepare EIS before issuing oil and gas leases that did not absolutely prohibit surface disturbance in designated wilderness of national forest); *Sierra Club v. Peterson*, 717 F.2d 1409, 1412-13 (D.C. Cir. 1983) (scrutinizing under NEPA agency's FONSI determining that EIS was not required for granting certain oil and gas leases); *see also Minn. Pub. Interest Research*, 498 F.2d at 1322-23 (holding that the Forest Service's sale of timber from national forests constitutes major federal action).

The BLM and Forest Service exercise legal control over the issuance and approval of oil and gas leases and permits because their roles in the issuance of a lease and approval of an APD and SUPA are condition precedents to the entirety of an oil and gas project on national forest land.  They also exercise discretion in fulfilling these roles.  Accordingly, their roles are not essentially ministerial, and this Court may reasonably infer that, based on the factual allegations in OWL's complaint, there remains major federal actions to occur under the 2005 LRMP, which amounts to the first step in any oil and gas project in the Forest.  *See Goos*, 911 F.2d at 1295-96.  Even if the Forest Service has given up its authority to reject individual SUPOs in the 2005 LRMP, which is not entirely clear from OWL's allegations in the complaint, the BLM's role, as alleged in OWL's complaint, still constitutes federal major actions.  *See Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999) (reiterating that "[i]f the [Forest Service] chooses not to retain authority to preclude all surface disturbing activities, an EIS must be prepared when the leases are issued" (alterations in original) (citation omitted) (internal quotation marks omitted)).

In sum, to state a claim under § 706(1), a plaintiff must allege facts allowing the Court to infer reasonably that an agency failed to take discrete agency action that it is required to take.  *SUWA*, 542 U.S. at 64.  For the reasons explained above, OWL alleges facts in its complaint that, taken as true and viewed in the light most favorable to OWL, allow this Court to infer that defendants failed to take a discrete agency action—supplementing the 2005 EIS—that defendants are required to take under NEPA.  This is because the 2008 RFDS and 2010 CCA presented "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impact" and there remained major federal action to occur: defendants' alleged continuing issuance and approval of oil and gas leases and permits in the

Forest, as stated in OWL's complaint. *Id.* at 72-73. Accordingly, the Court determines that OWL states a NEPA claim under § 706(1) upon which relief may be granted.

### C.   OWL And OS's NEPA Claims Under APA § 706(2)

Section 706(2) of the APA allows a court to hold unlawful and set aside certain agency actions, findings, and conclusions. 5 U.S.C. § 706(2). Section 704 of the APA limits judicial review to "final agency action for which there is no other adequate remedy in a court."[2] *Id.* § 704; *see SUWA*, 542 U.S. at 61-62 ("Where no other statute provides a private right of action, the 'agency action' complained of must be 'final agency action.'"). Defendants contend that OWL and OS's § 706(2) NEPA claims fail because OWL and OS have not identified a final agency action but instead allege only broad "programmatic" challenges. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (holding that a plaintiff cannot challenge an agency's entire program for wholesale correction but instead "must direct its attack against some particular 'agency action' that causes it harm"); *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d at 813 ("A broad agency program is not a final agency action within the meaning of 5 U.S.C. § 704.").

Defendants appear to argue, at least initially, that this is a Rule 12(b)(1) argument and that the Court should analyze it under that standard. To the extent that defendants make this argument, the Court disagrees. The Eighth Circuit has held that "[t]he APA is not an

---

[2]   Courts have different views on how the finality requirement applies to § 706(1) challenges. *Compare Ligon Specialized Hauler v. Interstate Commerce Comm'n*, 587 F.2d 304, 314 (6th Cir. 1978) (concluding that agency delay "must at some point be judicially reviewable if Section 706(1) is to have effect" and that "[t]hat point is reached . . . where the decision to delay or withhold action has become concrete" such that it becomes final), *with Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997) ("Judicial review of an agency's actions under § 706(1) for alleged delay has been deemed an exception to the 'final agency decision' requirement."). The Eighth Circuit appears to share the Sixth Circuit's view. *See Kenny v. Glickman*, 96 F.3d 1118, 1122 n.3 (8th Cir. 1996) ("The APA judicial review provisions apply equally to agency action and agency inaction."). Regardless, defendants do not challenge whether the agency inaction about which OWL complains under § 706(1) is final for judicial review purposes, so the Court need not address this issue.

independent jurisdictional provision . . . but merely provides the framework for judicial review of agency action." *Ochoa v. Holder*, 604 F.3d 546, 549 (8th Cir. 2010). "[T]he APA's requirements are part of a party's cause of action and are not jurisdictional." *Iowa League of Cities v. EPA*, 711 F.3d 844, 863 n.12 (8th Cir. 2013). Accordingly, the Court will analyze this argument under the Rule 12(b)(6) standard.

OWL agrees, and OS appears to agree, that a broad agency program is not a final agency action. OWL responds that it does not bring a programmatic challenge but instead brings a challenge to the 2010 SIR, which it argues constitutes a final agency action challengeable under § 706(2). OS responds that it has identified three types of final agency actions: the 2010 SIR, the resulting denial of the right to participate in the public comment process, and the approval of individual wells (*OS*, Dkt. No. 41, at 7). Because the Court determines below that OWL and OS have stated a claim based on the 2010 SIR being a final agency action, the Court need not address whether the resulting denial of the right to participate in the public comment process and the approval of individual wells were final agency actions to rule on the pending motions to dismiss.

For an agency action to be final, it must meet two conditions. First, "the action must mark the consummation of the agency's decision making process," as it "must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted) (internal quotation marks omitted). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (citation omitted) (internal quotation marks omitted). An agency report that "serves more like a tentative recommendation than a final and binding determination" is not a final agency action. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d at 813. However, "if the agency has issued a

definitive statement of its position, determining the rights and obligations of the parties, that action is final for purposes of judicial review despite the possibility of further proceedings in the agency to resolve subsidiary issues." *Id.* (citation omitted) (internal quotation marks omitted).

OWL argues that the SIR meets the requirements for a final agency action because the Forest Service used the SIR instead of the formal NEPA finding of no significant impact ("FONSI"), which is the typical document used for a final decision not to issue an EIS. 40 C.F.R. § 1501.4 (providing the formal procedure to decide whether to prepare an EIS). As the Eighth Circuit has stated, the Supreme Court has strongly signaled that an agency's decision to issue a FONSI is a final agency action permitting immediate judicial review as long as plaintiffs are able to point to an action "at least arguably triggering the agency's obligation to prepare an impact statement." *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d at 815 (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998)) (quoting *Found. on Econ. Trends v. Lyng*, 943 F.2d 79, 85 (D.C. Cir. 1991)). In *Lyng*, which the Eighth Circuit cited favorably in *Sierra Club v. U.S. Army Corps of Engineers*, the D.C. Circuit further explained that an action at least arguably triggering the agency's obligation to prepare an impact statement means "an identifiable action or event" that is a "major Federal action[] significantly affecting the quality of the human environment," within the meaning of NEPA. 943 F.2d at 85 (interpreting *Lujan*, 497 U.S. at 899). The Ninth Circuit appears to have extended these principles to SIRs when used instead of FONSIs. *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 937-38 (9th Cir. 2010) (implicitly finding that the SIR determining not to issue a supplemental environmental assessment upon discovery of new information after adoption of Forest Plan was final agency action by scrutinizing its findings under NEPA).

As discussed above, this Court determines that, based on the factual allegations in the pleadings, defendants' alleged role in the issuance and approval of oil and gas leases and permits constitutes "major Federal actions" within the meaning of NEPA and that an EIS may have been required after the 2008 RFDS and 2010 CCA.  Specifically, OS alleges that, subsequent to the SIR, defendants have leased mineral rights and approved exploratory and production drilling permits and intend to continue to do so (Dkt. No. 1, at 1-2).  The Court finds that these are identifiable actions and events as contemplated by *Sierra Club v. Army Corps of Engineers* and *Lyng*.  Although defendants argue that all specific leases and permits pointed to by OS are either unripe, moot, or barred by applicable statutes of limitation, these are summary judgment arguments which the Court to resolve would have to look to matters outside the pleadings. Based on the findings and case law above, the Court also finds that it may reasonably infer from the factual allegations in OWL and OS's complaints that the 2010 SIR was a final agency action. *See also Spear*, 520 U.S. at 178 (holding that a biological opinion and accompanying incidental take statement were final agency actions because they "alter the legal regime to which the action agency is subject, authorizing it to take endangered species if (but only if) it complies with prescribed conditions," having direct and appreciable legal consequences).

In sum, to state a claim under § 706(2), a plaintiff must allege facts allowing the Court to infer reasonably that defendants took a final agency action that is impermissible under the APA. For the reasons explained above, OWL and OS allege facts in their complaint that, taken as true and viewed in the light most favorable to OWL and OS, allow this Court to infer that defendants' took a final agency action.  This is because defendants' alleged continuing issuance and approval of oil and gas leases and permits in the Forest, as stated in OWL and OS's complaints, are identifiable major federal actions that significantly affect the quality of the human environment.

14

Further, OWL and OS allege facts that, taken as true and viewed in the light most favorable to OWL and OS, allow this Court to infer reasonably that the SIR's findings regarding the impact of the information contained in the 2008 RFDS and 2010 CCA were impermissibly arbitrary and capricious under NEPA. *See Goos*, 911 F.2d at 1292 (stating that agency's decision not to prepare a supplemental EIS, or an EIS in the first instance, is impermissible if that decision was arbitrary and capricious). Accordingly, the Court determines that OWL and OS state a NEPA claim under § 706(2) upon which relief may be granted.

### D.     OS's NFMA Claim

OS alleges that defendants failed to comply with NFMA planning requirements. Defendants argue that OS fails to state a claim under the NFMA because the Forest Service was under no obligation to amend or revise the 2005 Forest Plan.

There is a distinction between amending a forest plan and revising a forest plan. The Court agrees that there is nothing in the NFMA "or the implementing regulations which requires the Forest Service to amend the Plan." *Citizens for Envtl. Quality v. United States*, 731 F. Supp. 970, 992 (D. Colo. 1989). However, it appears that the Forest Service would be required to revise the Plan upon a finding by the Secretary of Agriculture that conditions in the unit had significantly changed. *See* 16 U.S.C. § 1604(f)(5) (The Forest Service "shall" revise forest plans "from time to time when the Secretary finds conditions in a unit have significantly changed, but at least every 15 years."); *Forest Guardians v. Thomas*, 967 F. Supp. 1536, 1555 (D. Ariz. 1997) ("[W]hile the Secretary has discretion in that a LRMP is to be revised when the Secretary finds conditions have changed, the Secretary *must* revise the LRMP at least every fifteen years.").

OS alleges that the 2005 Forest Plan fails to contemplate the impact of the amount of oil and gas projects predicted in the 2008 RFDS and 2010 CCA on certain areas, including wild and

scenic rivers in the Forest (*OS*, Dkt. No. 1, at 23-24; Dkt. No. 41, at 15).   In other words, OS appears to argue that the Secretary's decision that conditions in the unit have not significantly changed, as decided in the 2010 SIR and which allowed the Forest Service to avoid revising the Plan, was an arbitrary and capricious final agency action.   For the same reasons that OWL and OS state a NEPA claim upon which relief may be granted, OS states a NFMA claim upon which relief may be granted.   Specifically, the Court can reasonably infer that the SIR was a final agency action for purposes of OS's NFMA claim because OS alleges facts that, taken as true and viewed in the light most favorable to OS, allow the Court to infer reasonably that the unit had significantly changed, at least arguably triggering the Forest Service's obligation to revise the Plan.  *Cf. Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d at 815 (holding that, for purposes of a NEPA claim under the APA, a FONSI is a final agency action permitting immediate judicial review as long as plaintiffs are able to point to an action "at least arguably triggering the agency's obligation to prepare an impact statement").   The Court denies defendants' motion to dismiss OS's NFMA claim.

### E.      OS's WSRA Claim

Defendants next argue that OS fails to state a claim under the WSRA because the WSRA does not obligate the Forest Service to amend a Forest Plan to account for activities outside of a wild and scenic river corridor.

Under the WSRA, an "agency having jurisdiction over any lands which include, border upon, or are adjacent to, any river included within the National Wild and Scenic Rivers System . . . shall take such action respecting management policies, regulations, contracts, plans, affecting such lands . . . as may be necessary to protect such rivers."   16 U.S.C. § 1283(a).   The Eighth Circuit has stated that "§ 1283(a) does not require agencies managing adjacent federal land to

prepare or join in a WSRA plan. It merely instructs their managers to take actions that protect designated rivers. Whether that standard has been met in a particular case is a question of fact." *Newton Cnty. Wildlife Ass'n v. U.S. Forest Serv.*, 113 F.3d 110, 113 n.4 (8th Cir. 1997). Regarding other obligations an agency may have under the WSRA, the Eighth Circuit stated that "the agency has substantial discretion in deciding procedurally how it will meet those obligations." *Id.* at 112-13.

Here, OS contends that "defendants have taken no steps to plan for or address water quality impacts" on wild and scenic rivers from "gas leasing, exploration, and development" on bordering or adjacent land (Dkt. No. 1, at 29; Dkt. No. 41, at 16). This is an APA § 706(1) claim. However, OS fails to state a claim based on these allegations because it has failed to point to a discrete agency action that defendants were required to take under the WSRA. *See SUWA*, 542 U.S. at 64; *see also Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1111-13 (9th Cir. 2003) (dismissing plaintiff's claim that agency failed to consider potentially eligible rivers in project plans because the WSRA did not require it). Accordingly, the Court grants defendants' motion to dismiss OS's WSRA claim.

## F. OS's Energy Policy Act Claim

The Energy Policy Act provides that certain activities "shall be subject to a rebuttable presumption that the use of categorical exclusion under [NEPA] would apply . . . ." 42 U.S.C. § 15942(a). One such activity is

> [d]rilling an oil or gas well within a developed field for which an approved land use plan or environmental document prepared pursuant to NEPA analyzed such drilling as a reasonably foreseeable activity, so long as such plan or document was approved within 5 years prior to the date of spudding the well.

*Id.* § 15942(b)(3).

OS alleges that defendants have arbitrarily and capriciously abused 41 U.S.C. § 15942(b)(3) by applying the statute's categorical exclusion to approve SUPOs and APDs despite not having prepared a NEPA document analyzing such drilling within the past five years.  OS contends that defendants have used the 2010 SIR, which is not a NEPA document, to justify application of the categorical exclusion.  OS also alleges that defendants have not promulgated regulations defining a "developed field" (Dkt. No. 1, at 27).

The Energy Policy Act merely establishes a "rebuttable presumption that the use of a categorical exclusion under [NEPA] would apply."  42 U.S.C. § 15942(a).  It does not create a duty to promulgate regulations defining a "developed field" or "studying the impacts of such development" (Dkt. No. 1, at 27-28).  OS's allegations do not constitute claims separate from its NEPA claims or cognizable under the Energy Policy Act.  To the extent that OS attempts to bring a separate claim under the Energy Policy Act, that claim is dismissed.

## IV.   Conclusion

In conclusion, the Court grants in part and denies in part defendants' motions to dismiss (*OWL*, Dkt. No. 20; *OS*, Dkt. No. 30).  The Court dismisses OWL's claims regarding the Lake and OS's WSRA and Energy Policy Act claims.  OWL and OS's remaining claims survive defendants' motions to dismiss.

The parties are directed to file status reports within 14 days of the date of this Order.  In their status reports, the parties should note whether further discovery is needed in this case and, if so, identify specifically what discovery the parties propose to complete.  The parties also should note whether they anticipate a trial will be necessary so that a trial date can be set.  The Court will enter a scheduling order following and based upon the parties' status reports.

SO ORDERED this the 6th day of October, 2014.

Kristine G. Baker
United States District Judge